Dorsey vs. The Phillips & Colby Construction Company.

---

DORSEY VS. THE PHILLIPS & COLBY CONSTRUCTION COMPANY.

RAILROADS: CATTLE CHUTES: INJURY TO EMPLOYEES FROM UNNECESSARILY DANGEROUS STRUCTURES: COURT AND JURY. *(1) Whether custom excuses unnecessarily dangerous structures. (1-3) What questions for jury. (2, 4) When employee assumes extraordinary risk. What knowledge, or opportunity of knowledge, required.*

REVERSAL OF JUDGMENT: *(5) For instructions inaccurate (but not misleading), or merely defective.*

SPECIAL VERDICT. *(6) A special verdict construed.*

1. Whether a uniform custom of railroad companies to use structures unnecessarily dangerous to persons in their employ, would excuse the danger, *quære.* Upon the evidence in this case, it was a question for the jury, whether there is a universal or general custom of such companies to build cattle chutes as near to the track as was that which is alleged to have caused the injury here complained of.

2. If plaintiff knew, or ought reasonably to have known, the precise danger to him of the cattle chute in question, and still continued in his employment, he might be held to have assumed the extraordinary risk thus created; but this consequence of acquiescence must rest upon positive knowledge, or reasonable means of positive knowledge, of the precise

Dorsey vs. The Phillips & Colby Construction Company.

danger assumed, and not on vague surmise of the possibility of danger. And, upon the evidence in this case, it was for the jury to determine whether he had, or ought to have had, such knowledge.

3. The question of plaintiff's contributory negligence, being fairly debatable upon the evidence, was also for the jury.

4. The refusal of an instruction asked by the defendant, going upon the theory that, if plaintiff had, in the course of his employment (as a conductor on one of defendant's freight trains), sufficient opportunity to know the general position of the cattle chute, he was charged with knowledge of its dangerous character, was not error; such mere general knowledge, without opportunity for *accurate* knowledge, not being sufficient to so charge him.

5. A judgment will not be reversed for an instruction, incorrect in itself, so given or qualified that it could not mislead the jury; nor because the charge is not so full as might have been desirable upon some point on which the appellant did not ask an instruction.

6. The jury found specially a negative answer to the question, whether plaintiff knew or had means of knowing "the *existence and location* of the cattle chute in question." *Held*, that both the words, *existence* and *location*, being used in the question, it must be taken to refer to *exact* location or distance from the track; and the verdict is sustained by the evidence, although it clearly appears from plaintiff's own testimony that he had a general knowledge of the existence of the cattle chute.

APPEAL from the Circuit Court for *Portage* County.

On the 18th of December, 1873, plaintiff was in the employment of the defendant company as conductor of a freight train upon its road; and, in the course of such employment, while ascending by a side ladder to the top of a freight car in motion, was carried against a cattle chute, and received severe personal injuries; and he brought this action to recover for such injuries, alleging that the cattle chute was negligently, unskillfully and improperly constructed so near the defendant's track as to endanger the persons and lives of defendant's employees operating freight trains over its road at that place. The answer was a general denial.

At Amherst station, on the defendant's road, there are three tracks: (1) the main track; (2), further north, a middle track, connected with the main line at both ends; and (3), still

further north, a side or warehouse track, connected with the main line only at the west end, upon the outer or north side of which were located the cattle chute in question, the depot house, and an elevator. On the day when the accident happened, plaintiff's train left Stevens Point at 4:45 A. M., being fifteen minutes behind time, and arrived at Amherst at 6:15, while it was still dark. When the train approached Amherst station (from the west), it was held back, and two empty cars detached from it and set in on the side track. Plaintiff was then directed to take a car of wheat from the elevator, and for this purpose the two empty cars were again taken out; then the wheat car was taken out, and sent down the middle track in charge of Clark, one of the two brakemen who were with plaintiff's train; and plaintiff then undertook again, with Hanley, the second brakeman, to set the two empty cars in upon the side track. The switch being turned so as to permit the engine, pushing the two empty cars ahead of it, to pass back upon the side track, plaintiff sprang on that one of the two cars which was in advance, ran from it to the other car (which was immediately in front of the engine, and was coupled to it), and climbed down the side ladder which was near the rear end of that car, upon the north side, for the purpose of pulling the pin to uncouple the two cars from the engine, intending to return to the top of the car for the purpose of setting the brake, and so stopping the two cars on the side track, the same being on a descending grade. On reaching the foot of the ladder, he discovered that he could not reach the pin, because of the absence of a step present on some cars; and, the brakeman Hanley coming up at that moment, plaintiff directed him to pull the pin, and started back up the ladder to set the brake; but, before reaching the top of the car, he was swept off by the cattle chute, and sustained the injuries complained of.

The evidence for the plaintiff tended to show that it was customary for conductors of freight trains to assist personally

in setting in cars upon this side track; that the method of detaching and stopping cars pursued in this instance was a customary one, at that station, and had never been forbidden by the defendant; that it was also customary, in handling cars at that track, for the employees to work upon the outside of the track (*i. e.*, the side upon which the cattle chute, depothouse, and elevator were); and that this had never been forbidden by the defendant.

The cattle chute in question was distant about 119 feet from the switch connecting the side track with the main track. In its construction, two perpendicular posts were fixed in the ground, at a distance of thirty-seven or thirty-eight inches from the track. These were about twelve feet high, and far enough apart to permit the easy passage of cattle between them. They were connected by a timber at the top, to prevent their spreading; and they formed the front of a sloping driveway, which extended back to the cattle yard, and was boarded up closely at the sides to a considerable height. That part of this driveway which was nearest the track, was on a level with the platform of an ordinary box car standing on the side track opposite the chute. The distance between such a car, thus situated, and the front posts of the chute, was about sixteen inches; and a gang-plank of that width was used to fill this space when cattle were loaded. The distance between the posts and the outside of a side ladder on a common box car, was about one foot; and one standing upon such a ladder could not safely attempt to ride past the cattle chute; still less could he do so while *climbing* the ladder. Plaintiff himself testified that an addition of six inches to the space between the car and the cattle chute would not have enabled him to pass the chute in safety, but it would have required a foot; that the motions of a man's body in climbing up a ladder occupy a horizontal space of nearly two feet; but that, "if there had been a distance of two feet in [the case of] this cattle chute," he "could have passed through in safety."

The freight cars built for the defendant were constructed with ladders at the ends, and not at the sides; but many cars built for other companies were used in defendant's trains, and about half of all the freight cars so used had ladders at the sides, and not at the ends — the ladders on the opposing sides being respectively near to the opposite ends.

Plaintiff, after having served as a brakeman or conductor on freight trains upon the Lake Shore & Southern Michigan road for eight or nine years, entered into defendant's service in November, 1871, and was engaged either as conductor or brakeman on a freight train between Stevens Point and Menasha during several months in 1871, passing the stations at Amherst, Waupaca and Weyauwega once each day. *After* the construction of the cattle chute at Amherst station, which was in September, 1872, he ran the freight train as conductor, between the same points, first, from November, 1872, to March or April, 1873, a period of four or five months; and again, between the 1st and 18th of December, 1873. During the whole of the periods mentioned in the last sentence, he passed the three stations above named six times each week — three times in going eastward, and three times in returning westward. When running eastward, the regular time for passing Amherst station was six o'clock A. M.; while in going west, it was near the middle of the afternoon. Weyauwega is about twenty miles east of Amherst, and Waupaca is between the two. There was a cattle chute on the side track at each of these stations; and that fact was known to the plaintiff. These three chutes were at exactly, or almost exactly, the same distance from the track. Plaintiff himself testified that on one occasion, during the seventeen days immediately preceding the date of his injury, his brakeman Clark, while standing in the gangway between the engine and the tender, was struck by the cattle chute at Weyauwega, and thrown into the engine, and plaintiff then cautioned him, remarking: "This thing is pretty close, and you must look out for it." Plaintiff further

testified, however, that he had not cautioned Clark as to all the chutes, and "had not observed that they were all similarly situated with reference to the track." Hanley, the other brakeman on plaintiff's train, also testified that about a week or ten days before the injury to plaintiff, he (the witness) was standing on the side ladder of a box car moving upon the side track at Weyauwega, and plaintiff told him to "get up on the top of the car, or he would get knocked off" by the cattle chute; but that plaintiff had not cautioned him as to all the chutes along the road.

The testimony on both sides was very voluminous; but the general effect of it, as understood by this court, so far as it bears upon the points litigated, will sufficiently appear from the opinion.

After the evidence was all in, defendant moved for a nonsuit, on the ground that plaintiff had full means of knowledge, and did know, that the structure complained of was dangerous; that he knew its situation, but still continued in the employment, making no complaint; and that he was guilty of negligence. The motion was denied.

Defendant then requested the following instruction (there being evidence to which it was applicable): "If you find that plaintiff had been employed by defendant, as brakeman or conductor, on trains passing the cattle chute at Amherst several times a week during some months before he was hurt, and also that he had several times during that period assisted in running cars off the main track, past this cattle chute upon this side track, and off this side track upon the main track at Amherst, and had acted as conductor in charge of such transfers of cars upon and from this side track, then you must find that he had means of knowledge as to its situation, and as to the risk of injury which any person must run in descending the side ladder of a freight car as it passed that cattle chute." This instruction was refused.

The court instructed the jury that plaintiff's claim was for

injuries suffered by him while in defendant's employ as con-
ductor of a freight train on the Wisconsin Central Railway;
that plaintiff claimed that these injuries were sustained while
he was in the proper discharge of his duty as such conductor
in handling cars at Amherst, and were occasioned by reason
of a cattle chute having been erected by defendant so near the
track that, while plaintiff was going up a side ladder of the
car to turn down the brake, he was struck by the chute and
injured as described in the evidence. " He also claims that
the cattle chute was nearer to · the track than it is usual for
such structures to be, and dangerous; and that at the time the
injury occurred, it was dark, and, being engaged in his duties,
he did not think of it. *By the defendant the employment
and injury, at the time and in the manner claimed by the
plaintiff, is admitted.* But the defendant denies its liability,
for the reason that, being engaged in operating the Wisconsin
Central Railway as a general carrier, it had, in order to facil-
itate the loading of stock into the car at Amherst and other
points, .... erected, as permanent structures, cattle chutes,
at distances of not less than three feet from the rail of the
track, and that these were erected in the ordinary manner,
and at a distance from the track sanctioned by general usage
of railroads, and that the one at Amherst was not different
from those in general use by other companies, and not more
dangerous than such structures ordinarily or necessarily are
to the employees; and that the plaintiff knew of this structure,
or at least had ample means of knowledge, and therefore was
chargeable with knowledge of it and of its situation......If
defendant constructed the cattle chute in such a form and at
such a distance from the track or car as is usual and in com-
mon use among railroads, that repels the idea of negligence
in such erection, and defendant is not liable for any injuries
it may occasion to its employees....It is the duty of every
employer, whether a natural person or corporation, to fur-
nish approved and safe machinery, fixtures and appliances to

carry on the business intended; and if defective machinery, fixtures and appliances are used by an employer, by which the risk of operatives is increased, and if such employer, knowing the defect, does not inform the employees, and the latter, not being informed of the defect, are injured, the employer is liable in damages therefor.   But if the employee, being informed of the defect or risks, or knowing thereof, continues in such work, he assumes the risk, and the employer is not liable..... It appears that plaintiff was engaged upon defendant's road some nine months prior to the accident, and during that time passed and repassed the structure in question almost daily; and defendant claims that, having the means of knowledge of this structure and the risk it occasioned, plaintiff is held to all the consequences of actual knowledge.   Doubtless it is the duty of every operative to inform himself of the risks along the road, but, to charge him with knowledge because he had the means of knowledge, his means of knowledge must be full and ample, and he must have time and opportunity to observe the structure.....Where a person is engaged in an employment which requires him to inform himself of things affecting risks in his occupation, and has such opportunity to inform himself of the facts as a reasonably prudent and careful person would avail himself of, and inform himself of the facts, such person ought to be held chargeable with knowledge of the facts....If you find that plaintiff had been employed by defendant as brakeman or conductor on trains passing the cattle chute at Amherst several times a week, during some months before he was hurt, and that he had several times during that period assisted in running cars off from the main track past the cattle chute upon the side track, and off from the side track upon the main track at Amherst, and had acted as conductor in charge of such transferred cars upon and from the side track, then you may, if satisfied thereof, find that he had means of knowledge as to its situation, and as to the risk or injury which any person must run in descending the side

ladder of a freight car as it passed the cattle chute. The fact that plaintiff was hurt by striking the cattle chute, does not of itself prove it to be an improper one, or improperly situated. . . . . You are to determine that from all the circumstances ·of the case; the principle involved in the case being this, that if the danger was known to the plaintiff, or might, by the use of reasonable or ordinary care, have been known to him, he is presumed to have known it and assumed the risk. *But if, on the contrary, you find that he did not know of this structure and its risks, and did not have sufficient means of knowledge so as to charge him with the consequiences of actual knowledge — in other words, that the structure was unknown to him, and he had not sufficient opportunity to learn of it, and the danger that it occasioned to operatives,— then you ought to find for the plaintiff.*"

The defendant excepted to those parts of the charge which are in *italics*.

Thirteen questions were submitted to the jury to be answered by special verdict. Such of these questions as related to litigated points, are here given, with the answers of the jury.

" 4. Q. Was the cattle chute in such close proximity to the railroad track, as to unnecessarily increase the risks and dangers to which the men engaged in running cars past said chute were exposed? A. Yes.

"5. Q. If you answer yes to the above question, then: Did *Dorsey* know, on the 18th day of December, 1873, that said chute was in such dangerous proximity to the railroad? A. No.

" 6. Q. Was the plaintiff injured by coming in contact with said chute, on the 18th day of December, 1873, while in the necessary and proper discharge of his duties as a conductor of a freight train? A. Yes.

" 7. Q. Was the plaintiff injured while in the exercise of ordinary care and prudence upon his part, having regard to the management of running the train — the time, place and circumstances, and his means of knowing to what risks he was

exposed at that place and time, while discharging his necessary duties? A. Yes.

" 8. Q. Was the plaintiff guilty of any negligence upon his part, contributing to the injury, having regard to all the facts and circumstances of the case? A. No.

" 9. Q. From all the facts and circumstances, as given in evidence, and the law as given you by the court, do you find that the plaintiff ought to recover of the defendant damages on account of the injuries received by him? A. Yes.

" 10. Q. If in answer to the last proposition you answer yes, state what amount of damages he ought to recover of the defendant. A. The sum of five thousand dollars.

" 11. Q. Did the plaintiff know of the existence and location of the cattle chute, with reference to the side track, at and before the time of the injury complained of? A. No.

" 12. Did the plaintiff, at and before the time of the injury complained of, have means of knowledge as to the existence and location of the cattle chute in question, with reference to the side track? A. No.

" 13. Q. Was the cattle chute in question located and constructed in the manner usual and customary among railroad companies in the location and construction of such structures? A. No."

The jury also found a general verdict for the plaintiff, assessing his damages at $5,000.

The first seven questions above recited were submitted to the jury at plaintiff's request, and the last three at defendant's request. Defendant objected to the submission of the seventh question, but the objection was overruled. A motion by the defendant to set aside the verdict and grant a new trial, was denied; and defendant appealed from a judgment pursuant to the verdict.

*L. S. Dixon*, for the appellant, contended, 1. That the only fault imputed to the defendant was its negligence and unskillfulness in locating this cattle chute too near the track; and

Dorsey vs. The Phillips & Colby Construction Company.

that there was no evidence whatever of such alleged negligence or unskillfulness to go to the jury, and the motions for a nonsuit and for a new trial should have been granted on that ground. It appeared, beyond doubt or controversy, that the chute was constructed in the usual way, and located at the usual distance from the track — constructed and located as the exigencies of the business, and past experience in it, have proved to be safe, proper and convenient. These facts necessarily negative the proposition of negligence, and there was nothing to submit to the jury, and their finding in that particular is totally unsupported. In all cases, negligence is neither more nor less than a failure of duty; and the question here is, whether defendant failed to perform its duty in the location and construction of the chute — whether it failed to exercise ordinary care and prudence, such care and prudence as other ordinarily careful railway companies do and would exercise in building such structures. It being a structure well known to all persons engaged in railway business, long and universally used by all railway companies, and of a uniform, or very nearly uniform, mode of construction and location upon all railroads, the care and prudence due from the defendant in this particular are to be measured by the care and prudence which are exercised by other railway companies, and which experience has demonstrated to be proper and sufficient. Usage in such case, supported by long practical experience, and long acquiesced in and well settled, determines the question. Opinions of BRETT, J., and GROVE, J., in *Blamires v. L. & Y. R'y Co.*, L. R., 8 Exch., 288; *Mich. C. R. R. Co. v. Coleman*, 28 Mich., 448; *Nolan v. Shukle*, 8 Chi. Leg. News, April 28, 1877, p. 267; *Schultz v. Pacific Railroad*, 36 Mo., 32, and cases there cited. 2. That " where an employee has knowledge of the defects or imperfections in the cars or machinery upon or about which he is employed, *or might, by the exercise of due care to avoid injury to himself, have such knowledge*, and does not object thereto, but contin-

ues in his master's service, there he can not sustain an action for an injury caused by such defects or imperfections, but will be held to have assumed all the risks incident to the use of such defective cars or machinery." *Way v. Ill. Cent. R. R. Co.*, 40 Iowa, 341–343; *Dillon v. Union Pacific Railroad Co.*, 3 Dil., 319; *Wedgwood v. Railway Co.*, 41 Wis., 478; *C. & N. W. R'y Co. v. Donahue*, 75 Ill., 106; *Moss v. Johnson*, 22 id., 633, 642; *Devitt v. Railroad*, 50 Mo., 302; *McGlynn v. Brodie*, 31 Cal., 376; *Thayer v. Railroad Co.*, 22 Ind., 26–29; *Mad River & L. E. Railroad Co. v. Barber*, 5 Ohio St,. 541; *Davis v. Railroad Co.*, 20 Mich., 105; *Mich. C. Railroad Co. v. Dolan*, 32 id., 510, *Wright v. Railroad Co.*, 25 N. Y., 562, 566; *Gibson v. Railway Co.*, 63 id., 449 (20 Am. R., 552); *McMillan v. Railroad Co.*, 20 Barb., 449; *Hayden v. Smithville Manuf'g Co.*, 29 Conn., 548; *Ladd v. Railroad Co.*, 119 Mass., 412 (20 Am. R., 331); *Buzzell v. Laconia Manuf'g Co.*, 48 Me., 113; *Nolan v. Shukle*, Chi. L. N., April 28, 1877, p. 266; *Woodly v. Metropolitan Railway Co.*, 4 Am. L. T., 452; *Skipp v. Railway Co.*, 9 Exch., 223; *Williams v. Clough*, 3 H. & N., 258; *Griffiths v. Gidlow*, id., 648; *Assop v. Yates*, 2 id., 768; *Priestley v. Fowler*, 3 M. & W., 1. In several of these cases, the question arose upon a motion for a nonsuit; and in all or nearly all, whether there had been a verdict or not, the appellate court carefully examined the facts as proved by the witnesses, to determine whether there was any legal liability on the part of the employer. In this case the proofs conclusively showed that the plaintiff had knowledge of the existence and location of the chute with reference to the side track, and also that he had ample means of acquiring such knowledge, and, in the exercise of due care to avoid injury to himself, should have acquired it; and the court therefore erred in refusing a nonsuit, and in refusing a new trial, on those grounds. Counsel also contended that plaintiff's knowledge and means of knowledge were fully shown by his own statements and admissions as a

witness; and as to the effect of such admissions made by a plaintiff as a witness in his own behalf, he cited *Davis v. D. & M. R. R. Co.*, 20 Mich., 105, 128. To the point that plaintiff's having *neglected* to learn the location of the chute, when he had ample opportunities to do so, or his having *forgotten* it for the moment, would not enable him to recover, counsel cited especially 5 Ohio St., 565; 63 N. Y., 452; 40 Iowa, 343–4; 50 Mo., 305–6; 75 Ill., 108; 22 id., 642; 4 Am. L. T. R., 452. 3. That the court erred in refusing the instruction asked by defendant. *Devitt v. Railroad*, 50 Mo., 303, and other cases cited above. 4. That the court erred in charging the jury that " the employment *and injury* at the time and *in the manner* claimed by the plaintiff " was admitted by the defendant. Plaintiff claimed that he was injured by being struck by a cattle chute nearer to the track than usual, and dangerous; and this claim defendant denied. 5. That the court erred in the other part of the charge excepted to, because it entirely withdrew from the consideration of the jury the question whether defendant had been guilty of any want of care or skill in the location and construction of the cattle chute.

*G. W. Cate*, for the respondent, contended, 1. That defendant was under obligation to its employees to furnish them safe materials, structures and road-bed. 48 Me., 116; *Coombs v. N. B. Cordage Co.*, 102 Mass., 572; *Laning v. Railroad Co.*, 49 N. Y., 533; *C. & N. W. R'y Co. v. Jackson*, 8 Am. R., 663; *Harper v. Railroad Co.*, 4 id., 360; *Gibson v. Railroad Co.*, 2 id., 497; *C. & N. W. R'y Co. v. Swett*, 45 Ill., 197; *I. C. R. R. Co. v. Welch*, 52 id., 183 (4 Am., 593); *Perry v. Ricketts*, 55 id., 234; *C., C. & I. C. Railway Co. v. Troesch*, 68 id., 545; *C. & N. W. Railway Co. v. Taylor*, 69 id., 461. 2. That when plaintiff entered defendant's service, he had a right to assume that defendant had discharged its obligations in these respects, and that there were then no obstructions, and none would be built in the future, so as to be in the way

of the performance of any necessary duty. *I. C. R. R. Co. v. Welch*, 4 Am., 595; *Gibson v. Railroad Co.*, 2 id., 500; *Snow v. Railroad Co.*, 8 Allen, 441, per BIGELOW, J.; *Cayzer v. Taylor*, 10 Gray, 274; *Seaver v. Railroad Co.*, 14 id., 466. And he did not assume risks arising from the erection of structures whose dangerous character was unknown to him, but was or ought to have been known to the company. 13 Am., 163, opinion and note; 4 id., 593; *Noyes v. Smith*, 28 Vt., 63. 3. That before plaintiff could be charged with knowledge of the dangerous structure here in question, he must have had reasonable time and opportunity for observing it; that he cannot be held to a higher degree of diligence in that respect than that which is exercised by men in general engaged in the business in which he was engaged when the accident occurred (*Stucke v. Railroad Co.*, 9 Wis., 202; *Richards v. Sperry*, 2 id., 216; *Perkins v. Fond du Lac*, 34 id., 438); that, while plaintiff was acting as a conductor, his attention was exclusively due to the peculiar duties incident to his special employment (*Gibson v. Railroad Co.* and *I. C. R. R. Co. v. Welch, supra*); and that it would be unreasonable to demand of a person under circumstances in which his attention was naturally absorbed in his immediate business, that degree of thought and care which might reasonably be expected where there was more time for reflection and deliberation, or that he should guard against dangers of which he had never been informed. *Hunt v. Railroad Co.*, 26 Iowa, 364; *Greenleaf v. Railroad Co.*, 29 id., 14 (4 Am., 181); *Weisenberg v. Appleton*, 26 Wis., 56; *Wheeler v. Westport*, 30 id., 415. Under these legal principles, counsel argued at length from the record that there was ample evidence to go to the jury, upon all the questions submitted to them.

RYAN, C. J.   I. The nonsuit was properly denied. The case was one for the jury on all the points made.

*First: of the appellant's negligence.*— If a uniform custom

of railroad companies to use structures unnecessarily danger-
ous to persons employed in operating trains, had been proved,
we should hesitate gravely before holding that the custom
could excuse the danger. A positive acquiescence, *scienter*, of
one so employed, might indeed take away his right of action
for injury incurred by such a structure. But there is public
as well as private interest. The operation of railroad trains
is essentially highly dangerous, and it is a duty of railroad
companies, too plain for discussion, to use all reasonable skill
to mitigate, tolerating nothing to aggravate, the necessary
danger. This is not merely a private duty to individuals con-
cerned, but a public duty to the state, concerned in the wel-
fare of its citizens. And no custom, however uniform or
universal, which unnecessarily exposes railroad employees to
loss of life or limb, would seem to satisfy a duty which may
be regarded as an implied condition of their charters. We use
the word unnecessary, advisedly; distinguishing necessity
from convenience. A convenience may be so great as to be
regarded as a practical necessity. But a convenience merely
to lessen a little the labor of driving cattle into cars can hardly
rank as a necessity, or excuse such proximity of cattle chutes
to the track as to jeopardize life and limb of persons operat-
ing trains.

But we need not pursue this inquiry. For a careful exam-
ination of the evidence has satisfied us that no such custom is
established; much if not all of the evidence on both sides
tending to show that no uniform custom exists. It rather
appears to be a fair conclusion from the evidence, as far as it
goes, that cattle chutes are built at varying distances from the
track, according to varying notions of convenience of use in
driving cattle into cars. So far as a custom is involved in the
case, it was a question for the jury. The evidence affords no
warrant for holding, as matter of law, that the custom relied
on by the appellant is established.

And there certainly was evidence to go to the jury, of the

dangerous proximity to the railroad of the cattle chute in question; enough, in our judgment, to warrant the finding that it was unnecessarily dangerous. We do not propose to review the evidence. But there is a presumption of fact running through the whole printed case, that the structure was positively dangerous to operatives on moving trains, whose duty might take them to car ladders on that side; and that its dangerous relation to the track was due to one of two causes. It may be that the cattle chute was constructed with a view to the exclusive use of cars having ladders on the ends only; in which case it might have involved no special danger. In that view, it might have become dangerous by the use of cars having ladders on their sides only. The use of cars of the latter description, assuming the consequent danger of the cattle chute, made it an immediate duty to remove the cattle chute or change its structure. It may be that it was built with a view to the use of cars of both descriptions. In that case, its dangerous relation to the track was due to a paltry convenience, furnishing no color of legal excuse. A greater distance from the track might have made it more troublesome to load cattle from it, but would have insured operatives of the road from danger of life and limb. Human life is too precious in the eye of the law to be so lightly hazarded. Railroad companies owe a higher measure of duty to those who operate their trains, and to the public.

*Second: of the respondent's acquiescence.* — If he knew, or ought reasonably to have known, the precise danger to him, in the course of his employment, of the cattle chute in question, and saw fit, notwithstanding, to continue in his employment, he might be held to have assumed the extraordinary risk, as well as the ordinary risks, of his service. The authorities cited by the learned counsel for the appellant all agree in the general proposition. But it appears to us that this consequence of acquiescence ought to rest upon positive knowledge, or reasonable means of positive knowledge, of the precise dan-

ger assumed; not on vague surmise of the possibility of danger. And there might be serious difficulty in applying the principle to a case like this.

The safety of railroad trains depends largely upon the exclusive attention of those operating them, to the track, and to the trains themselves. It is not for the interest of railroad companies, or of the public — with like, if not equal, concern in the safety of trains,— that persons so employed should be charged with any duty or necessity to divert their attention. And it appears to us very doubtful whether persons operating railroad trains, and passing adjacent objects in rapid motion, with their attention fixed upon their duties, ought, without express proof of knowledge, to be charged with notice of the precise relation of such objects to the track. And even with actual notice of the dangerous proximity of adjacent objects, it may well be doubted whether it would be reasonable to expect them, while engaged in their duties, to retain constantly in their minds an accurate profile of the route of their employment, and of collateral places and things, so as to be always chargeable, as well by night as by day, with notice of the precise relation of the train to adjacent objects. In the case of objects so near the track as to be possibly dangerous, such a course might well divert their attention from their duty on the train, to their own safety in performing it. Notwithstanding some things said in some cases cited for the appellant, we should be rather inclined to think that, in the absence of express notice of immediate danger, employees operating trains may perform their duties under an implied warrant that they may do so without exposing themselves to extraordinary danger; that is, danger not necessarily incident to the course of their employment.

Be that as it may, the question can not well be considered as arising here. For though it certainly appears that the respondent knew of the general relation of the cattle chute to the track, it does not appear that he knew, or had such means

of information as would charge him with knowing, its precise relation to the track, its distance and its danger. There is indeed evidence tending to show that he had some impression of its dangerous proximity; perhaps not more than the vague idea of danger suggested by adjacent objects generally. Even this we understand him to deny. The court could not say, as matter of law, that he knew of the extraordinary danger, and continued his employment at his own risk of it. There was enough in the evidence to make his knowledge and acquiescence a proper question for the jury.

*Third: of the respondent's contributory negligence.*—" What constitutes negligence, or that want of care on the part of the person receiving the injury, which deprives him of any remedy, and neutralizes, as it were, the wrong of the party by whom the injury is inflicted, is a question depending on various circumstances. What may be negligence under some circumstanc es and conditions, may not under others. As observed by counsel, it is not a fact to be testified to, but can only be inferred from the *res gestæ* — from the facts given in evidence. Hence it may, in general, be said to be a conclusion of fact to be drawn by the jury under proper instructions from the court. It is always so where the facts, or rather the conclusion is fairly debatable, or rests in doubt. It is only where there is an entire absence of evidence tending to establish the case, or where, as in *Achtenhagen v. Watertown,* 18 Wis., 331, the negligence of the party injured or killed is affirmatively and clearly proved by the plaintiff, so as to admit of no doubt or controversy, that a nonsuit may properly be ordered." *Langhoff v. Railway Co.,* 19 Wis., 489.

Under this rule, it appears quite manifest that the court could not hold the respondent, as matter of law, guilty of contributory negligence. It was a question for the jury whether, under all the circumstances, he could have avoided the accident by the exercise of reasonable care. His general knowledge of the position and danger of the cattle chute, his means

of knowledge, at the time, of its nearness to him, his necessity of being where he was when he was injured, and his care or want of care for his own safety, under all the circumstances, were proper questions for the jury.

There is evidence tending to show that all collateral objects which could make the ascent and descent of the car ladders dangerous, were on the outside of the track, and that the inside was free from such objects. Such adjacent objects on the outside certainly implied possible danger, rendering the inside of the track safer. And it is remarkable that persons engaged in operating trains there should not confine themselves to that side. It might perhaps be difficult to account for it, except upon the view that familiar dangers lose their terror. But there is also evidence tending to show that the respondent could not well have discharged the duty in which he was engaged, on the inside ladder, at the other end of the car. Under a sudden pressure of duty, we cannot say that the respondent was bound to exercise the same measure of judgment which we do now in reviewing his conduct. That would appear to require of him a deliberation and circumspection which the necessity of his duty might preclude. "What may be negligence under some circumstances and conditions, may not under others." The question of his negligence " is fairly debatable, and rests in doubt." It was submitted to the jury, and there certainly is evidence to support the verdict. We cannot reverse their conclusion, even though we were inclined to come to a different one.

II. The difficulty which pervades the views taken for the appellant throughout, enters into the only instruction asked. It goes upon the theory that if the respondent had, in the course of his employment, sufficient opportunity to know the general position of the cattle chute, he was charged with knowledge of its dangerous character. We have sufficiently indicated our dissent from this. We think that it is contrary to the experience of human life, that one, knowing generally of

a thing, without opportunity of ascertaining its precise relations and conditions, is to be charged with notice of them. And the instruction, which goes upon general knowledge only, and ignores all opportunity of accurate knowledge, to charge the respondent with notice of the dangerous proximity of the cattle chute to the track, was properly refused.

III. Exceptions were taken to two passages of the charge, which were made the subject of criticism here. Either would be sufficiently erroneous, considered by itself, to reverse the judgment. But it is our duty to consider them in connection with the whole charge, and to determine whether they could mislead the jury. This court always reverses upon a charge correct in law, but so given that it might mislead the jury; and affirms upon a charge incorrect in itself, but so given or qualified that it could not mislead the jury.

The first passage of the charge in this case to which objection is taken, is the statement that the employment and injury of the respondent at the time and in the manner claimed by him, were admitted by the appellant. It is claimed that this imports the appellant's admission of the respondent's right of recovery. But the charge proceeds immediately to state the grounds of the defense at large. And, taken in connection with what follows, the sentence complained of imports no more than that the respondent's employment and his actual injury were not denied upon the trial, as appears to have been the truth. We cannot doubt that it must have been so understood by the jury.

The second passage is to the effect that, if the respondent had no knowledge, or means of knowledge, of the cattle chute and its danger, he must recover. The learned judge was explaining to the jury what knowledge of the cattle chute was necessary to charge the respondent with acquiescence in its danger. Elsewhere in the charge, all the conditions necessary to the respondent's recovery are stated. And, in the light of the whole charge, the passage in question signifies

but this: that, on the question immediately under considera-
tion, the want of knowledge on the part of the respondent
stated would not, so far, defeat his right to recover.

Neither passage could have misled the jury. The general
charge is too full and too clear.

The charge of the court below, quite full on other points,
contains no very specific instruction on the doctrine of con-
tributory negligence. We must confess that, if the doctrine
of contributory negligence had been given to the jury, the
verdict would have been more satisfactory to us. But if the
appellant had desired it, it was incumbent on it to pray for
proper instruction. And we cannot reverse a judgment be-
cause, on some point, the charge is not so full as might have
been desirable.

IV. The verdict of the jury gave us more trouble than
the rulings of the court.

The statute authorizing special verdicts appears designed
to guard against willful or mistaken verdicts, and to enable
the court to review the precise grounds on which verdicts are
found. And we have lately, more than once, reversed judg-
ments upon apparently willful or evasive verdicts.

In the verdict before us, the jury found that the respond-
ent did not know of the dangerous proximity of the cattle
chute to the track. They also found that he did not know,
and had no means of knowing, " the existence and location of
the cattle chute in question, with reference to the side track."

If this answer could import that the respondent had no
general knowledge, it would be clearly inconsistent with the
evidence. And the finding that he had no knowledge of the
danger of the cattle chute might, in that case, well rest upon
the finding that he had no knowledge of it at all. If such
were the construction of the verdict, it could not be supported.
And we confess that such was our first impression.

If the question put to the jury had been confined to the *lo-
cation* of the structure with reference to the track, we might

probably have had no difficulty in holding that the question called only for his knowledge of the general relation of the cattle chute to the track; the word, location, not necessarily implying their exact relation. The question would then have had substantially the same meaning as if it had inquired only of the *existence* of the cattle chute in reference to the track. But both words are used, and effect must be given to each. Location, by itself, as used in the question, would have imported substantially the same as existence, by itself. Each word being used in the question, must be taken in a different sense from the other; both words implying a greater extent of knowledge than either alone. General location is implied in the question by the word, existence; and the word, location, used with it, must signify more than mere existence, more than general location, in reference to the track. It must mean exact location, or distance from the track. We can see no other distinctive meaning to be given to it as it is used.

This was, presumably, the construction of the jury, who could hardly have found that the respondent had not the general knowledge to which he himself frankly testified. In this view, each answer is almost equivalent to the other.

We did not understand it to be claimed, upon the argument, that the questions considered bore a different construction. They gave us, however, the greatest doubt we had of our duty to affirm the judgment.

We are glad to acknowledge our obligation to counsel on both sides for thorough preparation and intelligent argument of this appeal, leaving little labor of investigation for us.

*By the Court.* — The judgment of the court below is affirmed.