Haley vs. Jump River Lumber Co.

HALEY, Respondent, vs. JUMP RIVER LUMBER COMPANY, Appellant.

*December 21, 1891 — March 22, 1892.*

*Railroads: Injury to employee: Negligence: Independent contractor: Special verdict: Assumption of risks discoverable by ordinary care: Evidence: Change of venue: Calling in another judge.*

1. In an action against the owner of a private logging railroad for injuries sustained by an employee in the wreck of a train loaded with logs, the complaint charged that defendant was negligent in respect to (1) the condition of the railroad; (2) the selection of chains for

Haley vs. Jump River Lumber Co.

binding loads of logs on the cars; (3) the sufficiency of such chains; (4) allowing a large log to remain beside the track in dangerous proximity thereto; and (5) the loading of the logs on the cars. There was evidence tending to show that the loading was done by an independent contractor, for whose negligence in that respect defendant would not be liable. The jury found, in a special verdict, that the defendant was negligent in the first four particulars mentioned; but the court refused to submit to them a question, proposed by defendant, as to whether the accident was caused in whole or in part by negligent loading. *Held,* that this was error, although the jury found that the wrecking of the train was caused by the log lying in the ditch near the track. If the court had not practically taken the question of negligent loading from the jury, they might have found that such loading was the proximate cause of the accident and the log lying near the track a remote cause only.

2. Although the inquiry as to whether the accident was caused *in part* by the negligence of the loader was immaterial, since in that case the defendant would still be liable, yet the proposed question should not have been rejected merely because that immaterial inquiry was joined with it.

3. The jury found that the plaintiff did not know that the log was lying in the ditch near the track; but the court refused to submit a question as to whether he could by the exercise of ordinary care have discovered such log and its precise relation to the track, and also refused to instruct the jury to the effect that if the danger caused by the presence of the log might by the use of reasonable or ordinary care have been known to him, he is presumed to have known it and assumed the risk. *Held,* error.

4. It being charged in the complaint that the roughness of the road-bed was one of the contributing causes of the accident, it was proper for the plaintiff to prove that any part of the road on which the train had run on the trip in question was rough or uneven, but not to prove the general condition of the road in other respects or other localities, unless this was done by the cross-examination, within proper limits, of defendant's witnesses.

5. Ch. 435, Laws of 1887, authorizing the calling in of another judge when a change of venue is asked on the ground of prejudice of the judge, is not repealed by ch. 166, Laws of 1889, providing that "when the place of trial shall be changed" the action "shall be sent for trial into an adjoining circuit when an affidavit of prejudice of the judge is filed."

6. A special verdict should not be a minute cross-examination of the jury, but should consist of a few questions covering the material and controverted questions of fact.

APPEAL from the Circuit Court for *Columbia* County.

Action to recover damages for personal injuries received by respondent in a wreck upon a private logging railroad owned and operated by appellant, October 31, 1889. *Haley* was a helper or trainman upon said road, the equipment of the road consisting of an engine and several logging-cars, by which logs were brought from the logging camps to the appellant's mill at Prentice. At the time of the accident the engine was drawing five cars or logging trucks loaded with logs over the road towards Prentice. *Haley* was riding on the forward end of the fourth car, when, for some reason, the chain which was wrapped around the logs on the third car broke, the logs upon said car fell or were thrown from the car, and the respondent was caught and thrown by one or more of such logs a considerable distance, suffering very severe injuries, which finally necessitated the amputation of both legs. The train broke in two parts and came to a stand-still. The claims of the parties as to the cause of the accident, and other facts necessary to the understanding of the case, will be found stated in the opinion.

A special verdict was rendered, as follows: "1. Was the road of the defendant company, so far as relates to its road-bed, its ties, its iron, and the surfacing of the ties, in a reasonably safe condition before and at the time the plaintiff received the injuries of which he complains? Answer. It was not. 2. Did the defendant company use reasonable and ordinary care in selecting and providing the wrapping chains with which the logs were bound on the cars at the time the plaintiff was injured? A. They did not. 3. Was the wrapping chain on the third car from the engine of good material and of sufficient strength and size, at the time the plaintiff was injured, for the ordinary purposes for which it was used? A. It was not. 4. Was there a large log lying on the right-hand side of the track going north, at or near the place where the plaintiff was injured?

Haley vs. Jump River Lumber Co.

A. Yes.    5. If, in answer to the preceding question, you answer there was such a log there, then state the diameter of it.    A. Thirty inches.    6. How near was such log, mentioned in the preceding two questions next above, if you find there was one, to the lower end of the bunk, so called, on the right-hand side of the cars as they passed such log? A. Six inches.    7. Was such log so near the track as to become a dangerous obstruction to cars passing there loaded with logs?    A. Yes.    8. Was such log one of the direct causes which wrecked the train that day, causing the injuries to the plaintiff?    A. Yes.    9. Did any of the logs on the third car in the train that day come in collision with such log mentioned in the preceding question?    A. Yes. 10. How long had such log been there on the right-hand side of the track?    A. Two weeks.    11. How long had that log remained there, to the knowledge of O. D. Van Dusen, the president of the defendant company?    A. Two weeks.    12. How long had such log been there, to the knowledge of George Cotter, the section foreman of the defendant company?    A. Two weeks.    13. Did the plaintiff, prior to the accident, know that the log was lying in the ditch near the track?    A. No.    14. If, in answer to the preceding question, you say that he did, then say whether he comprehended that the same was a dangerous obstruction to the running of cars along the track there.    15. What caused the breaking of the wrapping chain on the third car the day the accident occurred?    A. By a log on the third car coming in contact with the log in the ditch. 16. Was it a part of the plaintiff's duty, under his employment by the defendant company, before and at the time he was injured, to attend to the brakes on the defendant's logging train between the cars loaded with logs?    A. Yes. 17. Had the plaintiff been directed by O. D. Van Dusen, prior to the accident, not to ride on the logging trains of the defendant, except on the engine or tender or at the

rear end of the rear car in the train? A. No. 18. Had he been so directed as mentioned in the next preceding question by any other officer or agent of the defendant company, having authority from the company to give such direction? A. No. 19. Where was the plaintiff immediately preceding the time when he received his injuries? A. At his post of duty, between the third and fourth cars: 20. Was the plaintiff in the exercise of ordinary care at the time he was injured? A. Yes. 21. Was the plaintiff guilty of any negligence which directly contributed to produce the injuries which he received? A. No. 22. Did the plaintiff complain, prior to the accident, to O. D. Van Dusen and Charles L. Alverson of the insufficiency of the chains used for binding the logs on the cars? A. Yes. 23. If, in answer to the preceding question, you answer 'Yes,' then state whether Charles L. Alverson promised that suitable chains should be procured. A. Yes. 24. Was Charles L. Alverson authorized to make such promises by the defendant company? A. Yes. 25. Did the plaintiff remain in the defendant's employ an unreasonable length of time prior to his injury, relying upon such promise, under all the circumstances disclosed by the evidence in the case? A. No. 26. Was the defendant company guilty of any negligence directly contributing to produce the injuries which the plaintiff received? A. Yes. 27. What caused the wrecking of the train at the time in question, which resulted in the injury to the plaintiff? A. The log in the ditch. 28. What damages has the plaintiff sustained in consequence of the injuries which he received? A. Fifteen thousand dollars. 29. Was engineer Sweet guilty of any negligence which contributed to the injury, in running the train at the place of the accident at the rate of speed shown in the testimony? A. No."

Judgment for plaintiff was entered on this verdict, from which defendant appealed.

For the appellant there was a brief by *Cate, Jones & Sanborn,* and oral argument by *G. W. Cate* and *D. Lloyd Jones.*

For the respondent there were briefs by *Olin & Butler,* and oral argument by *J. M. Olin.*

The following opinion was filed February 2, 1892:

WINSLOW, J. The cars upon the private logging railroad in question are constructed simply for the purpose of carrying logs. They consist of a pair of railway trucks, upon which rests a frame-work of strong timber, without floor. Near each end of the car, and immediately over the middle of each truck, is a strong timber about nine feet in length, and which is called the "bunk." Upon these two bunks, which run transversely, the logs are rolled. When the bunk is full, or nearly so, with one layer, another layer is begun, which naturally contains one less log than the first layer, and so on until the load is complete. Before, however, the last one or two logs are put on, the "wrapping chain" is thrown around the middle of the logs, and fastened with a grab-hook somewhat loosely, with the idea that when the last logs are put on top they will, by pressure, take up the slack in the chain and make it tight. As a further means of fastening the logs, there is, at the end of each bunk, a sharp steel iron point called a "spud," projecting upwards. These spuds and the wrapping chains were the only means of keeping the logs in place which were in use on this train at the time of the accident.

The cause of the wreck in which the plaintiff was so seriously injured cannot be demonstrated with mathematical certainty. The plaintiff in his complaint gives his version of it. He says that the defendant failed to provide a safe and suitable road-bed, and that it was negligently constructed, rough and uneven, and allowed to so remain; that it failed to provide plaintiff a proper and suitable

place to perform his duties as brakeman, and failed to provide suitable and proper appliances for fastening the logs upon the cars; that it failed to provide chains of sufficient strength, but did provide chains small, weak, broken, and patched, and totally insufficient and unsuitable for the purpose; that for about ten days before the accident it negligently allowed several large logs to remain lying parallel with its track, so close to the track as to be an obstruction to cars loaded with logs. After making these general allegations of negligence, the complaint details the accident as follows:

"And plaintiff further alleges that on the 31st day of October, 1889, said defendant was operating said railroad and said logging train as aforesaid, by its authorized officers and agents, and transporting over the same a train composed of a number of cars drawn by said locomotive engine, and that said cars were heavily loaded with logs, and that each load was negligently and carelessly fastened upon the car upon which it rested by means of one of the said weak, small, improper, and unsuitable chains; that this plaintiff, acting as the agent and servant of said defendant, and in the lawful and proper performance of his duty, was riding upon said train, and was standing at one of the brakes upon said cars; that while so riding as such agent and servant, and while so lawfully performing his said duty, and when said train was running over said railroad, and at a point about a mile and a half distant from the said village of Prentice, in said Pierce county, one of said loaded cars in front of the car upon which this plaintiff was so lawfully standing came in contact with one of the said logs so negligently allowed to remain alongside said railroad track, as aforesaid, the chain which bound the logs upon said car gave way and broke, and the said logs, which were bound by said chain to said car, fell, or partly fell, from the said car upon which they were loaded, and some of them falling

with their front ends to the ground, or against said logs so negligently allowed to remain along-side said track, caused the logs upon the car upon which this plaintiff was standing to be thrown back upon him, so that this plaintiff was caught between two of said car-loads of logs, and by reason of the negligence of said defendant in so failing to provide suitable and proper chains to bind the logs upon said cars, and in so failing to keep its said road-bed in proper condition and free from obstructions, and with no want of care on his part, this plaintiff sustained the injuries hereinafter mentioned."

The answer denies all negligence on the part of defendant, and alleges contributory negligence by plaintiff. There was evidence tending to show that the cutting, hauling, and loading of the logs on the cars was done by one Folds, under a contract with the defendant, and that he employed his own help and was an independent contractor within the meaning of the law. The testimony as to the accident was quite voluminous. There were several eye-witnesses, who were riding in the engine at the time. It is unnecessary to review the testimony, but will be sufficient to say, in general, that it conflicted in many particulars, and that from it might be deduced several different conclusions as to the cause of the disaster, among which conclusions are: (1) That the wrapping chain on the third car broke because it was too weak for the purpose. The negligence here involved (if any) would be in not providing a reasonably sufficient wrapping chain. (2) That the chain was of ample strength for all ordinary use, but that by reason of its being loose a log worked out over the end of the bunk and collided with the log in the ditch, thus causing the breaking of the chain and the ensuing disaster. The negligence here involved (if any) would be in the loading of the car, joined with negligence in leaving obstructions in dangerous proximity to the track. (3) That the chain was of ample

strength, but that, solely by reason of its being loose, a log worked out over the end of the bunk and struck the ground, thus causing the breaking of the chain and the wreck. The negligence involved here (if any) would, or might be, *solely* in the loading of the car.

There may be other solutions of the vexed question as to the cause or causes of the disaster, which could be legitimately based upon the evidence, but it is not necessary to our present purpose to pursue the inquiry further. It is enough that there is a theory, which is fairly deducible from the evidence, which explains the accident on the sole ground of negligence on the part of the person or persons who loaded the cars. As has been stated, the evidence tended to show that the loading was done by an independent contractor. If this was the case, and the contractor's negligence in loading was the sole cause of the accident, then, under the principle approved by this court in *Hackett v. W. U. Tel. Co.* 80 Wis. 187, the defendant was not liable for the result. Manifestly the question should have been submitted to the jury in some manner so that they could have passed upon it. It was an issuable fact, and one which the defendant was entitled to have passed upon. The defendant requested that the question be submitted to the jury whether the accident was caused in whole or in part by negligent loading, and the court refused to submit it. This question was proposed, with others, and the bill of exceptions states that to the refusal to submit them the defendant excepted, and excepted to the refusal to submit each one separately. We think the exception sufficient. It is said by respondent's counsel that the question was immaterial, because, if answered in the affirmative, still defendant would be liable, under the rule that where the negligence of a master and co-employee contribute to an injury the master is still liable. Doubtless the inquiry whether the injury was caused *in part* by the negligence

of the loader was immaterial, but the inquiry whether it was wholly the result of negligent loading was highly material, and should not have been rejected merely because the immaterial inquiry was joined with it. Furthermore, also, the jury might have answered the question proposed to the effect that the accident was wholly caused by negligent loading, had they had an opportunity to do so under proper instructions. We think it clear that there was error in not submitting to the jury the question whether the accident was not caused wholly by the negligence of an independent contractor.

Another question was proposed by appellant as a part of the special verdict, and refused, as follows: "Could the plaintiff, by the exercise of ordinary care, have discovered this log lying in the ditch, and its precise relation to the track?" The circuit court judge did submit the question whether the plaintiff knew the log was lying in the ditch near the track, and the jury answered it in the negative. In connection with the proposed question, the defendant also asked instructions to the effect that if plaintiff ought reasonably to have known that the log in the ditch lay in close and dangerous proximity to the track, then he assumed the risk, notwithstanding the fact that he denied actual knowledge of the fact. This instruction was refused, and its substance was nowhere embodied in the general charge. This also was error. The principle is that if the alleged defect or element of danger is such that, in the exercise of ordinary care, the plaintiff ought to have observed it and comprehended the danger likely to result, then he assumes the risk if he continues in the employment without complaint. *Dorsey v. P. & C. Const. Co.* 42 Wis. 583; *Ballou v. C. & N. W. R. Co.* 54 Wis. 257; *Goltz v. M., L. S. & W. R. Co.* 76 Wis. 136. The jury should have been allowed, in some form, to make this inquiry.

It is claimed that the court erred in admitting evidence

Haley vs. Jump River Lumber Co.

as to the general condition of the road-bed. As we construe the complaint, it charges that the roughness of the road-bed was one of the contributing causes of the accident, although it does not specify in what exact manner that condition contributed to produce the wreck. In this view of the complaint, we think it was proper for the plaintiff, in making his case, to prove facts showing that any part of the road over which this train had run on this trip was rough or uneven, but not to go into proof generally of the general condition of the road in other respects or in other localities. We do not mean to say that, upon cross-examination of defendant's witnesses, it may not be proper for the plaintiff to go further than this, if he keeps within the limits of proper cross-examination. We think that the questions asked of William Folds, one of defendant's witnesses, were proper cross-examination of his direct testimony.

An affidavit of prejudice of the circuit judge was filed by defendant just before the trial of the case, and thereupon Judge SIEBECKER, in lieu of changing the place of trial, called in Judge BENNETT, of the twelfth circuit, who proceeded to try the cause. To this action defendant objected, and excepted. It is now claimed by defendant that ch. 166, Laws of 1889 (S. & B. Ann. Stats. sec. 2626), which provides that an action shall be sent for trial into an adjoining circuit when an affidavit of prejudice of the judge is filed," in effect repeals ch. 435, Laws of 1887 (S. & B. Ann. Stats. sec. 2624a), which authorizes the calling in of another judge when an affidavit of prejudice is filed. This claim cannot be maintained. Ch. 166 aforesaid plainly means that, *in case* the venue is changed on account of prejudice of the judge, the case shall be sent to an adjoining circuit. The whole section is limited by the first clause, " when the place of trial shall be changed." It is still left within the power of the court to exercise the option provided in ch. 435.

Exception was taken on the trial to evidence tending to show that there was a safer method of binding logs upon the cars than that used by the defendant, to wit, by the use of chains at the corners of the outside logs, called "corner binds." It is extremely doubtful whether this evidence was admissible, under the present state of the pleadings, as the complaint charges no negligence with respect to the manner of loading, except the use of weak and improper chains; but as a new trial must be had, and this question, with some others discussed by counsel, may not arise again, we deem it unnecessary to pass upon them.

*By the Court.*— Judgment reversed, and action remanded for a new trial.

The respondent having made a motion for a rehearing, the following opinion was filed March 22, 1892:

Lyon, C. J.   We do not suppose the learned and courteous counsel who prepared the argument in support of the motion for a rehearing intended to be especially severe upon this court when they therein expressed the opinion that the decision herein evinces an entire disregard of many material facts in the case, that it is a manifest violation of the plainest principles of law and justice, and that it is a wide departure from well-settled legal principles; yet they will pardon us for suggesting that these are not well-chosen terms in which to characterize a judgment of any court.   This court is liable to err, and sometimes does err, in its judgments, but always, with cheerful alacrity, corrects such errors when discovered.   No caustic applications are necessary to goad it to its duty in that behalf, and hence, as a general rule, their use is not to be encouraged.   Now let us examine the decision in this case, as briefly as we may, and see if it is justly liable to be thus characterized.

1. The specifications of negligence imputed to defendant

are: (1) That the railroad was in an unsafe condition; (2) that ordinary care was not used in selecting and providing chains with which to bind the loads of logs upon the cars; (3) that the chain with which the load was bound on the car in front of where plaintiff was standing when the accident happened was insufficient; (4) that defendant suffered a large log to remain in the ditch on the side of and dangerously near the track; and (5) that the cars on the wrecked train "were heavily loaded with logs, and that each load was negligently and carelessly fastened upon the car on which it rested" by means of one of such defective chains. The court submitted twenty-eight questions of fact to the jury. Among them were questions as to whether the defendant was negligent in the four particulars first above mentioned, and the jury found that it was. The defendant asked the court also to submit the fifth specification of negligence to the jury, to wit, whether the logs were negligently loaded, and the court refused to do so. This ruling practically took that question from the jury, and thus eliminated it from the case. That is the only question on the subject of defendant's alleged negligence an affirmative answer to which might benefit the plaintiff, and it was substantially excluded from the consideration of the jury. Its significance is, as stated in the opinion prepared by my Brother WINSLOW, that the testimony tends to prove the cars were loaded by an independent contractor, and hence that any negligence in loading them was, or might have been, the negligence of such contractor and not of defendant.

But it is said that, inasmuch as the jury found that the wrecking of the train was caused by the log lying in the ditch, it is immaterial whether the logs were negligently loaded or not. If they were, the negligence of the contractor and defendant concurred in causing the accident, in which case the defendant would remain liable. This argu-

ment is ingenious and plausible, but fallacious.    The court,
in carefully worded questions, submitted it to the jury to
find whether the defendant had been negligent in respect
to the condition of the railroad; the selection of chains for
binding loads of logs on the cars; the sufficiency of. such
chains; and the dangerous proximity of the log to the track,
and notice to defendant's officers thereof.   At the same time
the court refused to permit the jury to find specially
whether the logs were properly loaded.    It is reason-
able to. believe that any juror would understand, from
such proceedings and ruling, that the question of the negli-
gent loading of the logs was out of the case, and hence
may not have entered into the consideration of the jury
when they made their finding that the log in the ditch
caused the wrecking of the train.    Suppose this rejected
question had been submitted to the jury, and they had an-
swered that the cars were negligently loaded, we would
then have five distinct negligent acts or omissions, or both,
each of which may have contributed to, or either of which
may have been the proximate cause of, the injury com-
plained of.    Now, suppose the court had instructed the
jury to find which of these was or were the proximate cause
of the injury, who can say the jury would not have found
that the negligent loading of the cars was such proximate
cause, and the presence of the log a remote or consequential
cause?    There is abundant testimony to support a finding
that the cars would have passed the log in safety had they
been properly loaded.    Were such the finding, the testi-
mony tends to show a state of facts, to wit, the interven-
tion of an independent contractor, which might defeat a
recovery in this action.    Hence it was clearly error to re-
fuse to submit the proposed question, as to the negligent
loading of the cars, to the jury.
    2. The court was asked in a variety of forms, but refused,
to charge the jury in substance that if the danger caused

by the presence of the log in the ditch "was known to the plaintiff, or might by the use of reasonable or ordinary care have been known to him, he is presumed to have known it and assumed the risk." The proposed instructions do not make the want of actual or imputed knowledge of the presence of the log the test of defendant's liability, but make such test the want of knowledge, or reasonable means thereof, of the *danger* resulting from the presence of the log where it was left. Had the proposed instruction related only to knowledge that the log was there, the case would be within the rule in the *Dorsey Case* (*Dorsey v. P. & C. Const. Co.*), 42 Wis. 583, and the *Hulehan Case* (*Hulehan v. G. B., W. & St. P. R. Co.*), 68 Wis. 520. But the proposed instruction is fairly within the rule stated hypothetically in the *Dorsey Case*, by RYAN, C. J., as follows: "If he [the plaintiff] knew, or ought reasonably to have known, the precise danger to him, in the course of his employment, of the cattle chute in question, and saw fit, notwithstanding, to continue in his employment, he might be held to have assumed the extraordinary risk, as well as the ordinary risks, of his service. The authorities cited by the learned counsel for the appellant all agree in the general proposition." The general charge contains no equivalent of the proposed instruction, and the jury had the right to understand, as we do, that the court intended to instruct them that, unless the plaintiff actually knew of the presence of the log in close proximity to the track, and the danger created thereby, he did not assume the risk of being injured by it. This entirely ruled out of the case the material question whether he "ought reasonably to have known the precise danger to him in the course of his employment," resulting from the log being left where it was. Unquestionably this was error. Again, the question on the same subject, proposed for submission to the jury, is the corollary of the proposed instructions, for it calls upon the

Haley vs. Jump River Lumber Co.

jury to find, not only whether the plaintiff by the exercise of ordinary care could have discovered the log, but also "its precise relation to the track." The sentence quoted is the equivalent of "precise danger to plaintiff."

The special verdict consists of twenty-eight questions submitted to the jury, and their answers thereto, and covers quite minutely nearly all disputed questions of fact in the case. Doubtless it was within the discretion of the circuit court to submit those multitudinous questions as the basis of a special verdict. But we say here, as we have said in other cases, that it were better if the trial courts would discountenance a minute cross-examination of the jury and insist that a few questions should be framed, covering all material and controverted questions of fact. For example, in this verdict we find ten questions, and the answers thereto, concerning the log in the ditch. The whole subject could have been better covered in two or three questions. But, inasmuch as the interrogatories on this subject were so minute and exhaustive, we think it was error not to submit also the question proposed on behalf of defendant on the same subject. The trial court should see to it that the right to a special verdict is not used to entrap the jury into error, as it sometimes is by defendants in desperate or doubtful cases. No such motive is imputed to defendant or its counsel in the present case.

*By the Court.*— The motion for a rehearing is denied, with $25 costs.