### No. 12,272.

WILLIAM ERSLEW AND WIFE VS. NEW ORLEANS & NORTHEASTERN RAILROAD COMPANY, NEW ORLEANS CITY & LAKE RAILROAD COMPANY AND NEW ORLEANS TRACTION COMPANY.

It is negligence on the part of an electric street car company in the construction and establishment of its plant to so place one of its guy wires over the track of a steam railway company as not to afford sufficient space for the latter's trains to easily and conveniently pass without risk of danger and injury to its servants and employees.

It is negligence on the part of the steam railway company to permit an electric street car company to so construct and maintain over its tracks a guy wire that will endanger the lives of its servants and employees.

If an employee of the steam railway company knew or ought reasonably to have known the precise danger to him of the guy wire of the electric street car company in the course of his employment, and saw fit, notwithstanding, to

continue in it, he might be held to have assumed the extraordinary risk as well as the ordinary risks of his service. But this consequence must rest upon positive knowledge, or reasonable means of positive knowledge of the precise danger assumed.

APPEAL from the Civil District Court for the Parish of Orleans. *King, J.*

*Benjamin Rice Forman* for Plaintiffs, Appellees.

*Harry H. Hall* for N. O. & N. E. R. R. Co., Defendant, Appellant.

*Denègre, Blair & Denègre* for N. O. Traction Co., Ltd., and N. O. C. & L. R. R. Co., Defendants, Appellants.

Argued and submitted December 2, 1896.
Opinion handed down December 14, 1896.
Rehearing refused January 4, 1897.

The opinion of the court was delivered by

WATKINS, J.   This action is for the sum of twenty thousand dollars damages, brought by plaintiffs for the reparation of the injuries suffered and inherited by them in the death of their son, through the fault, negligence and want of due care on the part of these defendants—their claims being made against the three defendants *in solido*.

The cause having been submitted to and tried by the judge, there was a decree rendered in favor of the plaintiffs and against the defendants *in solido* for the sum of five thousand dollars, and the latter have appealed—the plaintiffs having answered the appeal, and prayed for the amount of the judgment to be raised to the full sum demanded in their petition.

For the purpose of being exact, and correctly stating the issues, we have extracted from the brief of counsel for New Orleans & Northeastern Railroad Company, the following summary of the pleadings (Brief, pp. 1 to 4), viz.:

" The petition avers:

" ' Petitioners are informed, and believe, and so aver, that the

New Orleans City & Lake Railroad Company owns the franchise, track and equipment of the electric line of street cars, usually known as the Levee and Barracks Line, running along Levee and Enghien streets, and other public streets and highways in New Orleans, and it and the Traction Company (aforesaid) have a common manage · ment and control, and jointly operate said line, and have a joint interest therein, and the Traction Company, with the consent and under the direction of the said New Orleans City & Lake Railroad Company negligently and unskilfully put up and erected a guy wire across the public street and public levee, and across the tracks of a steam railroad company, lawfully laid along the public levee and and along Levee street, a public street and highway at the foot or intersection of Enghien street, with the levee and Levee street, so close to the ground as to obstruct the free passage of cars and vehicles with high load, and so close to the ground as to be dangerous to the life of brakemen on freight cars passing under it. The said steam railroad track had been there on the public highway and was itself a public highway for a long number of years, and it was negligence to place a strong guy wire across the said highway and track where large freight cars loaded with furniture and bulky articles were well known to be constantly passing, and so close to the ground as to be a constant source of danger to brakemen, who, in the discharge of their duties, are obliged to be on the top of the cars.

" ' The New Orleans & Northeastern Railroad Company is liable, because it was its duty to its employees and all others in like situation to prevent the said wire being stretched in a dangerous position over its track, and to compel its immediate removal. The wire had been there a sufficient time for the said railroad company to compel its removal, and it was negligence in said company to run freight cars under said wire, with brakemen on top of said cars.

" ' The said Traction Company is liable, because it placed the wire across the public highway in so dangerous a manner, and is interested and joins in the operation and use of the line of electric railway, of which the said guy wire is a part.

" ' And the New Orleans City & Lake Railroad Company is liable, because it owns the said franchise and line aforesaid, procured the Traction Company to erect it, as its agent. The servants and agents of the defendant were warned of the dangers of the guy wire several

FORTY-NINTH ANNUAL REPORTS, 1897.          89

Erslew and Wife vs. Railroad and Traction Co.

weeks before it resulted in the death of petitioner's son, who, on or about 18th February, 1896, was in the performance of his duties as brakeman on a freight car of the New Orleans & Northeastern Railroad Company, and in its service, which was being propelled rapidly along Levee street when, just as he arose from his brake, his head struck this guy wire above described and knocked him off the car, and he was horribly mangled; and after suffering great pain of body and mind, he died. He contributed. to the support of his parents, and they had a legal right to be supported by him. He was a steady, faithful, industrious boy, or young man. For his suffering, pain and agony of body and mind petitioners claim fourteen hundred ($1400) dollars; for funeral expenses, one hundred ($100) dollars; for their own loss of the comfort and support of their son, eighteen thousand five hundred ($18,500) dollars.'

" *The answer* of the N. O. & N. E. Ry. Co. is as follows:

" 'And now into court comes, by its president, C. C. Harvey, the N. O. & N. E. R. R. Co., made one of the defendants herein, and for answer to the plaintiff's petition, denies all and singular the allegations thereof, except in so far as may be hereinafter admitted.

" 'It admits that Ernest Erslew, on or about the time stated in plaintiff's petition, lost his life by falling from a train of freight cars being operated by this respondent, and which cars passed over the said Erslew, thereby killing him.

" ' But your respondent specially denies that said accident and resulting death was caused in any manner by its fault, unskilfulness or negligence, or that of its servants or employees.

" ' And further specially answering, respondent avers that the guy wire referred to in plaintiff's petition was perfectly visible, that said Ernest Lewis Erslew knew of its location and had been frequently warned in respect thereto.

" 'That he knew of the danger due to the location of said wire, both actually and presumptively, by reason of the patent and visible nature of the risk; that he had been frequently warned not only concerning the location of said wire, but of the danger to which said location exposed him and others.

" 'That he had many times, both on the day that he lost his life and many days prior thereto, frequently passed under said wire; that said wire and its location came within the risk assumed by him in virtue of his employment, and that he contributed to the injuries resulting in his death by his own negligence and imprudence.' "

The following is a brief summary of the points made and relied upon by the Traction Company and the City & Lake Railroad Company, as the following extracts from their counsel's printed argument will show, viz.:

### " 1.—GENERAL STATE OF THE CASE.

" To justify a judgment for plaintiff in this case two things must occur: Negligence on the part of defendant causing the accident; absence of negligence on the part of the deceased contributing to the accident. No matter how gross the fault or negligence of defendants, plaintiff can not recover if the evidence shows that the accident could have been avoided by the exercise of ordinary care and attention by the deceased, or if the evidence shows that the accident was due, *in any degree*, to heedlessness or inattention on the part of the deceased.

"These defendants mainly rely upon the fact, established by the uncontradicted evidence, that the deplorable death of young Erslew was due, in part, to his inattention to a danger which was patent and visible; to his forgetfulness of a danger with which he was familiar, and of which he knew and had been warned—a danger he could have easily escaped had he not been inattentive and forgetful. This defence is wholly independent of the fault or the negligence charged against these defendants. It would suffice to defeat recovery, though we admitted, or the court found to have been established, every fault or negligence which plaintiff has charged us with.

" The case is a very simple one. There is little or no conflict of evidence, and little or no room for controversy over the law applicable thereto.

" In September or October, 1895, the New Orleans Traction Company, Limited, one of the defendants, strung a guy wire across some railroad tracks on the levee. The height of this wire was such that a man standing on the top of certain kinds of freight cars, in frequent use on the Northeastern Railroad, would have to duck his head in order to avoid being knocked off the car.

"This wire was a half inch in diameter, and was plainly visible for some distance. One of the plaintiff's witnesses said that it could be plainly seen nearly a hundred yards off. All of his witnesses saw it plainly at the time of the accident while standing across the street a considerable distance off.

"The accident occurred in February, 1896. During the whole period of the existence of the wire across the Northeastern track plaintiff's son had been in the employ of the Northeastern Railroad Company. His duties required him to stand on the top of cars and to pass daily under the wire. He knew of the location of the wire and was familiar with the necessity and means of avoiding it by ducking his head, not only because it was patent and visible, but because he had been specially warned and cautioned in respect thereto. The uncontradicted testimony of two train crew foremen, under whom the deceased had worked at different times, established that his attention had been called to the danger of the wire and that he had been warned in respect thereto. The danger was obvious; the means of avoiding were also obvious and easy to observe."

Pages 1 and 2 of brief.

To epitomize, plaintiff's theory is that the Traction Company and City & Lake Railroad Company, being under joint management and control in the construction and operation of the lines of street railway in the city of New Orleans known as the Levee & Barracks, amongst others, which extends along Levee and Enghien streets, and other public highways of said city, negligently and unskilfully put up and erected a guy wire across the tracks of the Northeastern Railroad Company which had been theretofore laid along the public levee and adjacent to Levee street, at the foot of Enghien street, so close to the ground as to be dangerous to the lives of brakemen on freight cars passing under it.

That it was negligence to place such a guy wire across the said highway and track where large freight cars were well known to be constantly passing; and "so close to the ground as to be a constant source of danger to brakemen, who in the discharge of their duties, are obliged to be on the top of the cars."

That it was negligence on the part of the Northeastern Railroad Company, and it is liable because it did not prevent the construction of a guy wire so situated and in such a dangerous position over its track; and further, because it did not compel the Traction Company and the City & Lake Railroad Company to remove this dangerous obstruction.

That, knowing of. the construction and maintenance of this dangerous obstruction, it was negligence on the part of the Northeastern Railroad Company to run its freight trains under it constantly

and customarily, to the imminent danger and peril of the lives of its brakemen whose duties required them to remain upon the roofs of said cars.

That at the time of the accident which caused the death of their son he was engaged in the performance of his duties as brakeman on one of the freight cars of the Northeastern Railroad Company, and in its service while it was being propelled rapidly along the track, when his head coming in contact with the said guy wire, he was knocked off, felled to the ground and killed.

The common defence of all the defendants is want of fault and negligence on their part and contributory negligence on the part of plaintiff's son, in that the guy wire was easily and plainly visible, and could have been readily seen and avoided by plaintiff's son had he paid proper attention, and that he had been frequently advised of the danger and warned against it, and that he had frequently passed under this wire while engaged in the daily performance of his duties as brakeman, and thus assumed the risk of danger therefrom as an incident of his employment.

In other words, that the plaintiff's son was guilty of contributory negligence by reason of his inattention to or forgetfulness of a danger incident to his employment, and which he might have avoided by the exercise of due care and attention.

The facts are few and simple and in the main the witnesses agree.

A fair summary of them is as follows, viz.:

That the accident happened on the 18th of February, 1896, while young Erslew was standing on the roof of what is designated in the evidence as a California fruit car from the Southern Pacific Railroad, as it was attached to a train of freight cars which was passing on the track of the Northeastern Railroad Company, when he was struck by an overhead wire of the New Orleans Traction Company and City & Lake Railroad Company, felled to the ground and killed almost instantly.

The accident was witnessed by two or three persons who were on the sidewalk near by at the time, and whose testimony is in the record. They agree in the statement, that it occurred in the morning at 7:25 o'clock, and that young Erslew " partly turned his head, his back (being) toward the river, so the wire (caught) him, and (he) went down between the cars;'' that is to say, between the first and second cars in the train.

His position was "on the rear end of the first car" when the accident happened, and his face was toward the woods, though slightly averted, and his back toward the ·levee, thus being in a station at right angles with the course of the train, which, at the time, was going south, the railroad track running, at this point, almost parallel with the levee on the Mississippi river, and between it and the Levee & Barracks street railway track.

The overhead wire "struck him right above the shoulder, under the neck."

At the time of the accident young Erslew was in the employment of the Northeastern Railroad Company as a switchman and brakeman, whose duty it was to couple cars; and, while thus engaged, to work on the roof of cars as well as below.

A very clear statement is made by one of the Northeastern Railroad Company's employees—the switch foreman, or foreman of the switch gang or crew.

In substance he says:

That he was in charge of the train on which young Erslew was, on the day of the accident, as foreman of the crew.

That young Erslew's duty was to obey signals given him by the engineer. He was the only man the engineer could see; and for that reason he was stationed on the head of the train. Erslew occupied such a position as would enable him to see the foreman in the rear, on the ground, at the same time.

It was Erslew's business to watch both the engineer and foreman, and catch their signals, and to signal to each one of them in return.

The following excerpt from this witness' interrogation gives a clear view of the situation:

" Q. What was he "—young Erslew—" doing on the day he was killed?

" A. Obeying signals. I instructed him to get on the head car. He was working with engine 219; and the engineer on the lower end of the yard was working engine 201; and I told him to get on top of the fruit car so he could give us the signals from the rear end. We were pulling out from track 9 to go on track 10 to pick up a caboose."

On being asked if he (witness) knew of the guy wire which caused Erslew's death, he answered in the affirmative.

Same witness repeats this statement and says that the guy wire "would not clear a man standing on a high car, but if a man was standing on an ordinary freight car, it would clear him."

On being asked what he would do when he passed under this guy wire, answered that he " *stooped sometimes; if he was standing on a high car he would have to stoop.*"

This witness says that young Erslew had been in this "service of the company about five or six days before this accident happened, and that he notified him about the guy wire about that time.   That he told him to "look out for the wire at Enghien street and the levee; that it was too low and would not clear a man standing on the top of the car," and that he told him that he (witness) "*had to stoop several times* to keep from getting knocked off the cars."

That after this notification young Erslew had occasion to pass under that wire frequently; sometimes as often as eight or ten times a day.

This witness states that the car young Erslew was on was "a very high car—the highest that is used;" and other evidence in the record establishes the fact that it was a California fruit car of very large dimensions, and much higher than the ordinary freight car is.

That it measured thirteen (13) feet five (5) inches and one-fourth ($\frac{1}{4}$) from the top to the railroad track.

This witness says: "That is what is called an average height of the fruit car, but that the ordinary box car runs from eleven (11) feet six (6) inches up to this height."

That "taking box cars as they run (they are) about twelve feet," that is to say eighteen (18) inches lower than California fruit cars are.

The guy wire was attached at one end to an iron post planted in the levee of six (6) feet in height, and it extended to a post on the levee side of Enghein street, which was twenty-one (21) feet in height, passing over the track of the Northeastern Railroad Company at a height of eighteen (18) feet three (3) inches.

It thus appears that from these estimates there was an intervening space of a little more than six feet between this guy wire and the ordinary box car; and between it and the average fruit car of only four (4) feet and ten (10) inches.

Manifestly, then, this wire was so constructed as to pass box cars of the average height of twelve feet, and leave a space between

sufficiently great to clear a man standing on the roof of six feet in height, but not so as to clear a man of only five feet in height standing on the roof of a fruit car.

Applying these estimates—and they were made by an employee of the Northeastern Railroad Company and not disavowed by either of the other defendants making common cause—to the preceding statements of the witnesses, it seems clear that the blame is fairly placed upon the defendants, and that young Erslew in no manner contributed to the accident.

At the time of the occurrence he was standing on the roof of the forward car of a freight train while it was in motion, and at the rear end where the foreman of the switch crew had assigned him a position, so that he could give the signals to the engineer as well as to him.

At the time of the accident the witness occupied a position on the ground near by, and the train was being "pulled out from track 9 to go on track 10 to pick up a caboose," when the guy wire "struck Erslew right above the shoulders under the neck."

Evidently, the accident would not have happened if young Erslew had been upon an *ordinary* freight car, and there is no evidence that he had, during his brief period of employment of *six days*, ever been called upon to occupy a *fruit* car, or that he was advised or knew of the difference or the height of the cars.

Though many of the witnesses were interrogated on the point, there was no one who stated that Erslew had ever had occasion to stoop down in order to avoid the guy wire as the foreman had done.

From all the evidence it is evident that the Traction Company and the City & Lake Railroad Company, in the first instance, erected the guy wire at least eighteen inches lower than it should have been in order that fruit cars of average height could be passed beneath it with safety to the operators and employees of the Northeastern Railroad Company, and they were consequently negligent, and that, in permitting this guy wire to be thus erected over its track and subsequently maintained, to the great danger of its employees, was negligence on the part of the Northeastern Railroad Company.

The attention of the servants and agents of the Traction Company was attracted to the improper height of the guy wire at the time of its erection, and full knowledge of this defect and the danger it threatened to its employees was repeatedly brought home to the

Northeastern Railroad Company through the subaltern officers of the corporation to whom the management of its trains are entrusted and by whom the employees and operatives are governed and directed.

This knowledge is fully disclosed by the testimony of the defendant's witnesses and their employees.

Notwithstanding this guy wire may have been visible, and young Erslew had been warned of its existence and dangerous character, there is nothing to show that he had, on any occasion, to stoop down in order to avoid it, and for that reason was not aware of that necessity, but, on the contrary, having had occasion frequently to pass under the wire while engaged in his daily avocation on the roofs of *ordinary* box cars, without the necessity of stooping, the evident inference is that he did not deem it necessary.

It can not be said, in view of these facts, that the accident was due, in any part, to the forgetfulness of, or inattention to, a *known* danger, which might have been avoided by the exercise of due care and proper caution on the part of the deceased.

Having entered this service only a few days before the accident, is a circumstance strongly corroborative of this theory.

Forgetfulness of a known danger is treated by some authors and courts as contributory negligence, but it will be necessary to produce and analyze the authorities in order to sustain their applicability to the instant case.

The effect of voluntary exposure to danger is thus stated by Beach on Contributory Negligence, Sec. 37:

" While it is unquestionably true that one may voluntarily and unnecessarily expose himself or his property to danger without thereby becoming guilty of contributory negligence, as a matter of law, it is, nevertheless, an established rule that where one does knowingly put himself or his property in danger there is presumption that he, *ipso facto*, assumes all the risks reasonably to be apprehended from such a course of conduct, as where one goes voluntarily upon a railway track, without keeping watch, at a point where it is known to be especially dangerous, or ventures upon a bridge, track, or highway which he knows to be defective or unsafe; and where one knowing the danger temporarily forgets it, and in consequence suffers, his forgetfulness will not avail him as an excuse. What he knows he must remember at his peril, and not to remember is contributory negligence if it occasions injury."

And, in affirmance of the principle announced by Mr. Beach, we have made the following selections from the brief of the counsel for the Traction Company and the City & Lake Railroad Company, viz.:

"So, in the case of Walker vs. Town of Reedsville (N. C.), 2 S. E. Rep. 74, where plaintiff was suing to recover damages from falling into an open pit near a highway which had been negligently left without guard or rail, it was proved that plaintiff knew of the existence of the pit, but had forgotten it at the time. The court said:

"A reasonably prudent and careful man would not forget the presence of such a danger in his immediate neighborhood, one he had seen and observed every day for more than a fortnight, and but a few hours before he received the hurt. He was bound to act upon his information, and to use ordinary care and prudence in shielding and protecting himself from what he knew to be a menacing danger to every one who passed near it. He forgot and failed to be careful at his peril, and in his own wrong."

In the conspicuous case of Butterfield vs. Forrester, 11 East 60. Lord Ellenborough said:

"A party is not to cast himself upon an obstruction which has been made by the fault of another, and avail himself of it, if he do not himself use common and ordinary care to be in the right. * * * One person being in fault will not dispense with another's using ordinary care for himself. Two things must concur to support this action, an obstruction in the road by the fault of the defendant, and no want of ordinary care to avoid it on the part of the plaintiff."

Again:

"Applying the foregoing principles to overhead structures it is said in 3 Woods on Railroads, Sec. 379, p. 1747:

"But where the servant knows, or ought to know of the obstruction, he can not recover for an injury received therefrom, because by reason of his failure to guard against it, and neglecting to do so, he is treated as being guilty of contributory negligence."

The following is the entire *syllabus* or head-note of the case of *Williams vs. Edl. & W. R. Co..*, New York Court of Appeals, 22 N. E. Rep. 1117. It correctly states the facts and conclusions of the court:

"In an action by a brakeman against a railroad company for personal injuries received by being struck by a bridge while standing on the roof of a freight car while engaged in his work, it appears from the plaintiff's evidence that the bridge was too low for him to pass

7

under while standing upright; that he was familiar with the bridge and was standing with his back to the engine when he knew that the train was about to pass under the bridge. *Held*, that the plaintiff's testimony showing contributory negligence, defendant's motion for a non-suit should have been granted."

In Brossman vs. Lehigh Valley Railroad Company, 13 Pa. St. 490, the conclusion of the court is thus stated, viz.:

"Decisions, in accord with those cited are multitudinous, and the able counsel for plaintiff has adduced none to the contrary. They are too well grounded to be overruled, save by legislative power. When the hazards incident to the duties of the employees are open before his eyes, meet him every day of his services, and would knock him down if he did not stoop to avoid them, and he continues in the service without promise of amendment, clearly he accepts the risks of the situation. It is no matter whether danger signals are on other roads, for he was not deceived as to the degree of danger he incurred."

Again:

"In *Rains vs. St. Louis, etc., Railroad Company*, 71 Mo. 164, the head-notes correctly state the facts and the conclusion of the court, as follows:

"A railway company is not bound to see that a foot-bridge crossing the line is at a height sufficient to enable brakemen to pass under it safely while standing upright on the top of freight cars; and if a brakeman is thus killed while in this position, being familiar with the situation and the danger, his own negligence contributes to his death, and there can be no recovery."

To the same effect is the case of B. & O. R. R. Co. vs. Stricker, 51 Maryland, 47, where it was held:

"A conductor of a railroad train, while standing on the top of a car in motion, in discharge of his duty, was injured by being brought in contact with a low bridge. He had been well acquainted with its position and character and accustomed to pass under it. *Held*, that the company were not liable in damages."

In City of Vicksburg vs. Hennessey, 54 Miss. 491, the court declared:

"The universal rule in this class of cases is that the injury must proceed wholly and solely from the defective highway; that the plaintiff must be entirely free from any negligence which con-

tributed to the result, and that the burden of showing affirmatively that he exercised at least ordinary care and prudence is upon him. Unless he establishes this, he must fail, notwithstanding he has shown the greatest remissness on the part of the corporate authorities.''

In *Wilson vs. Charleston*, 8 Allen, 137, it was held that '' a person who voluntarily attempted to pass over a sidewalk which he knew to be very dangerous by reason of ice upon it, which he might easily have avoided, could not maintain an action against the town, which was bound to keep the way in repair, to recover judgment for injuries sustained by falling upon the ice.  *  .*   *   While the proper degree of care is required from the county, so on the other hand, at least ordinary care is required from the traveler.   He can not shut his eyes against apparent dangers, and drive recklessly along the highway.   He is bound to keep his eyes open, and maintain a proper degree of watchfulness against danger.   *Hubbard vs. Concord*, 35 N. H. 52).   *   *   *   In an action against a town or county for injuries resulting from defects in the highway, it is generally a good defence to show that the plaintiff was himself guilty of contributory negligence.''

Giving to the foregoing opinions the widest scope and possible applicability, they proceed upon the principle that the injured party had *knowledge* of the obstacle or defect, and by the exercise of due care and caution he could have avoided it.   Of course, that is true in a limited sense, and the rule applies to one who is '' familiar with the situation and the danger,'' and negligently fails to avoid it; but it can not be assumed, under the facts of this case, that the deceased was possessed of sufficient knowledge of the danger as to justify the presumption that he undertook all the risks reasonably to be apprehended.

But the correctness of the doctrine announced in the foregoing authorities has been seriously questioned by courts of great ability.

In the recent case of Simonds vs. City of Baraboo, 67 Northwestern Reporter, 40, the Wisconsin Court said:

'' Beach lays down the rule (Section 12) in effect, that where one knows the danger, but temporarily forgets it, and in consequence suffers an injury, his forgetfulness will not avail him as an excuse; that what he knows he must remember at his peril; and that a failure to remember constitutes contributory negligence, if it occasion injury.

"But this opinion is not supported by reputable authorities any-where, and has been expressly repudiated by this court. Wheeler vs. Town of Westport, 30 Wisconsin, 392."

The doctrine announced by Mr. Beach is mainly grounded on an opinion of the Massachusetts court in Gilman vs. Inhabitants of Dur-field, 13 Gray, 577, but the Wisconsin court said in Wheeler vs. Westport, *supra*, that that court had " carried the doctrine of forget-fulness " too far.

And the court proceeded to say in the Simonds case:

" In fact the rule of Gilman vs. Inhabitants of Durfield has been so fenced in by subsequent decisions as to be practically overruled," citing: Smith vs. Lowell, 6 Allen, 39; Whittaker vs. West Boyl-ston, 97 Mass. 273; Blood vs. Tyngsborough, 103 Mass. 509; Bring-ham vs. Worcester Co., 147 Mass. 446; Weed vs. Village of Ball-ston Spa, 76 N. Y. 329; Bassett vs. Fish, 75 N. Y. 303; Driscoll vs. Mayor, etc., 11 Hun. 101; Dorsey vs. Construction Co., 42 Wis. 583 ; Cuthbert vs. Appleton, 24 Wis. 383.

To these cases may be added the following, viz.: Alcorn vs. Railroad, 108 Mo. 81; Snow vs. Railroad, 8 Allen, 441; Plant vs. Railroad, 6 N. Y. 607.

In Gardner vs. Railroad Company, 130 U. S. 349, the Supreme Court cited and approved the opinion expressed by the Massachu-setts court in Snow vs. Housatonic Railroad, 8 Allen, 441, and said:

" The Supreme Judicial Court of Massachusetts held that the defendant was not relieved of its liability to the plaintiff by reason of any relation which subsisted between him and it at the time of the accident arising out of the employment in which he was engaged; because, among other reasons, it did not appear that the defect in the road was the result of any such negligence in the servant as to excuse the defendant, but was caused by a want of repair in the superstructure between the tracks of the defendant's road, which defendant was bound to keep in a suitable and safe condition, so that plaintiff could pass over it without incurring the risk of injury."

And the court then said: "We regarded this doctrine as so well settled that in Texas & Pacific Railway Company vs. Cox, 145 U. S. 593, we contented ourselves, without discussion, with a reference to some of the cases in this court upon the subject."

In Whittaker vs. Inhabitants of West Boylston, 97 Mass. 273, it was held that " the fact that a person injured by reason of a defect

in a highway had previous knowledge of the defect, is not conclusive evidence that he was wanting in due care at the time of the accient."

In Wood vs. The Village of Ballston Spa, 76 N. Y. 329, the court said:

"The defence that there was contributory negligence on the part of plaintiff rests mainly upon the fact that the plaintiff was familiar with the street, and on several occasions before the accident had seen the excavation, and the argument is that he ought to have avoided driving into it. But we think the question of the plaintiff's negligence was one of fact, and the finding of the referee thereon can not be disturbed. In general, a person traveling upon a highway is justified in assuming that it is safe. The plaintiff, although he had known of the excavation, might not remember *its exact location*, or the fact may have been forgotten."

And upon an examination and due consideration of the whole case the court held:

"Under the circumstances the defendant was properly chargeable with notice of the existence of the excavation and with negligence in not abating the nuisance, or so guarding the excavation as to prevent the accident to persons using the street."

But with regard to their obligation of due care and caution less strictness in the observance is imposed upon an employee than on a mere stranger sustaining no contract relations to the person or corporation inflicting an injury.

But the important question as to the amount and character of knowledge an employee of a corporation must possess of the existence of a dangerous structure to constitute contributory negligence, as a question of fact, was settled in Dorsey vs. The Phillips & Colby Construction Company, 42 Wisconsin, 583, in which the court say:

"If he knew, or ought reasonably to have known, the precise danger to him, in the course of his employment, of the cattle chute in question, and saw fit, notwithstanding, to continue in his employment, he might be held to have assumed the extraordinary risk as well as the ordinary risks of his service.

"The authorities cited by learned counsel for the appellant all agree in the general proposition. But it appears to us that this consequence of acquiescence ought to rest upon *positive knowledge*, or reasonable means of positive knowledge of the precise danger assumed, not on vague surmises of the possibility of danger."

Again:

" And it appears to us very doubtful whether persons operating trains and passing adjacent objects in rapid motion, with their atten- tion fixed upon their duties, ought, without express proof of knowl- edge, to be charged with notice of the *precise relation* of such sub- jects to the track. And even with actual notice of the dangerous proximity of adjacent objects, it may well be doubted whether it would be reasonable to expect them, while engaged in their' duties, to retain *constantly in their minds* an accurate profile of the route of their employment and of collateral places and things, so as to be always chargeable, as well by night as by day, with notice of the precise relation of the train to adjacent objects.

"In the case of objects so near the track as to be possibly dan- gerous, such a course might well divert their attention from their duty on the train, to their own safety in performing it."

That was the case of an employee of the defendant being injured by being carried against a cattle-chute while, in the course of his employment, he "was ascending by a side ladder to the top of a freight car in motion"—the charge being " that the cattle-chute was negligently, unskilfully and improperly constructed so near the defendant's track as to endanger the persons and lives of the defend- ant's employees operating freight trains over its road at that place."

The jury found a verdict in favor of the plaintiff for five thousand dollars for the personal injuries he received, and the Supreme Court affirmed it.

The foregoing principles have been fully and well stated by this court in Myhan vs. Electric Light Company, 41 An. 961, thus:

" Based on sound reason and sheer justice, the law as expounded by jurisprudence is clear that it is not contributory negligence to engage in a dangerous occupation;  *  *  *  that the risk assumed by the servant is the ordinary hazard incident to the employment, and this is synonymous with unavoidable accident;  *  *  *  that unless the act is necessarily and inevitably dangerous, no negligence can be imputed; that the servant has a right to rely on the care and the superior knowledge, information and judgment of the employer, and to act upon the presumption that the latter would not expose him to unnecessary risk and has taken all necessary precaution; that the employee is not bound to inquire as to latent, but only patent defects, and that he has the right to presume that this inquiry has

been made by the employer, upon whom the duty devolves, and although the servant may know of the defects, this will not defeat his claim unless it is shown that he knew that the defects were dangerous," etc.

In Wilson vs. Telephone and Telegraph Company, 41 An. 1041, the plaintiff sued the defendant for damages " for injuries sustained by a guy wire erected for the purpose of supporting the posts of the company," and, in our opinion, we said: "The Telephone and Telegraph Company had an undoubted right to erect poles and secure them, but this permission did not authorize them to put them up and to secure them by wires so strung as to endanger human life."

In our opinion both the law and the evidence support the plaintiff's claim, and, that as a question of fact, sufficient knowledge on the part of the deceased is not established to justify the assertion, that he had assumed the risk of danger from the guy wire, and was, consequently, guilty of contributory fault whereby the defendants are exonorated.

The proof shows that the deceased was a young man of nineteen or twenty years of age, strong and vigorous. That from his wages he contributed to the support of his parents. That by the accident he was not instantaneously killed, but, that after being knocked off the car, he fell between the one he was standing on and the next one thereto, and his limbs, passing under the car wheels, were badly mangled and he soon after died. That while living he must have suffered great pain of body and mind.

The plaintiffs being his father and mother his forced heirs.

Under the circumstances we are of opinion that the plaintiffs are entitled to recover, as the forced heirs of the deceased, the sum of two thousand five hundred dollars as damages for the pain and agony suffered by their son, and, also, in their own right, for the loss of his services, comfort and support. Perez vs. McMahon and Railroad Co., 47 An. 1391.

It is therefore ordered and decreed that the amount awarded by the judge a quo be reduced to the sum of two thousand five hundred dollars, and that as thus amended same be affirmed, the costs of appeal being against the appellee.