LEWIS H. SCHERZER, APPELLEE, V. LINCOLN TRACTION COMPANY, APPELLANT.

FILED MAY 13, 1912.   No. 17,070.

1. **Electricity:** STREET RAILWAYS: MAINTENANCE OF ELECTRIC WIRES: LIABILITY. The right to construct and maintain an overhead trolley wire carrying a deadly current of electricity across the tracks of a steam railroad imposes upon those having such privilege the duty of so managing affairs as not to injure persons lawfully operating the trains of the railroad company.

2. **Street Railways:** MAINTENANCE OF ELECTRIC WIRES: INJURY: PRESUMPTION OF NEGLIGENCE. An injury to an employee of the railroad company from contact with such an overhead trolley wire affords a presumption of negligence, and requires the party maintaining the structure to show that the dangerous condition of its wire was caused by some unforeseen act or agency beyond its control.

3. ——: ——: ACTION FOR NEGLIGENCE: DEFENSES. A release of the railroad company by the injured employee in consideration of the payment of wages and a small gratuity given the injured person, where no liability existed upon the part of the railroad company, is not a defense to an action against the party causing such injury.

4. **Instructions** examined and approved.

APPEAL from the district court for Lancaster county: ALBERT J. CORNISH, JUDGE. *Affirmed.*

*C. S. Allen,* for appellant.

*Greene & Greene,* contra.

BARNES, J.

Action to recover damages for personal injuries sustained by the plaintiff by coming in contact with the overhead trolley wire of the defendant where its track crosses the line of the Chicago & Northwestern Railway Company on North Fourteenth street in the city of Lincoln. The cause was tried to a jury in the district court for Lancaster county, where the plaintiff had the verdict and judgment, and the defendant has appealed.

The appellant contends that the verdict is not sustained by the evidence. The abstracts disclose, without dispute, that in the spring of 1887 the Chicago & Northwestern Railway Company built its railroad across Fourteenth street in the city of Lincoln, and in the year 1891 the defendant constructed its street railway, consisting of tracks, poles and an overhead trolley wire upon and along North Fourteenth street, across the railroad tracks, for the purpose of transporting passengers to and from the Nebraska state fair; that for about a week before and after that event the defendant company uses its track on North Fourteenth street for that purpose, and that for the remainder of each year that part of its system is used very infrequently, if at all; that up to the 18th day of October, 1909, the defendant had maintained its overhead trolley wire where it crosses the railroad tracks at a sufficient height to enable the employees of the Northwestern company to safely operate its trains by riding, as it was necessary for them to do, upon the top of its largest freight cars; that on the day above mentioned, at about 7 o'clock in the evening, the plaintiff, while properly performing his duties as yardmaster of the Northwestern company, and while riding upon top of a box car in one of the company's trains of cars, was struck by the defendant's overhead trolley wire, which for some cause, not fully shown by the record, had sagged at the place of crossing sufficiently to allow it to strike the plaintiff in the face; that his face, mouth and tongue were cut and

bruised, some of his teeth were broken or destroyed; that he was badly burned by contact with defendant's live trolley wire, and thereby sustained severe injuries. It appears that it was dark at the time the accident occurred, and plaintiff could not see the condition of the trolley wire. It further appears that frequently for several years before that time, and once upon that day, plaintiff had passed under this wire, while riding upon one of the highest freight cars in use by the railroad company, without injury or danger, and therefore had the right to assume that the wire was still in its former position. There was some testimony introduced which tended to show that the next morning after the accident occurred the wire was sagged at that point, and hung from six inches to one foot below the place where it had theretofore been maintained. Plaintiff also testified that he noticed that the supporting poles looked old and weak.

Defendant argues, upon the foregoing facts, that plaintiff cannot invoke the rule *res ipsa loquitur*, or, in other words, that negligence on its part is not to be presumed. Section 1, ch. 26a, Comp. St. 1911, provides in part that all persons, associations, and corporations engaged in the generating and transmitting of electric current for sale in this state for power or other purposes are hereby granted the right of way for all necessary poles and wires along, within and across any of the public highways of this state. It further provides, among other things, that all such wires shall be placed at least 20 feet above all road crossings, and that all such poles and wires shall be so placed as not to interfere with the public use of any such highways; that such wires shall in no case be maintained at a less height than 27 feet above the top of the rails of any railroad tracks. It also provides that nothing contained in that section shall be construed to grant any rights within the corporate limits of any village or city of the first and second class or of the metropolitan class in this state. The record contains no ordinance or ordinances of the **city** of Lincoln relating to that subject.

Therefore, in the absence of direct statutory provisions, we are compelled to resort to the rule of the common law in such cases in order to determine this question.

In 1 Joyce, Electric Law (2d ed.) sec. 409, it is said: "The fact that a street railway is a proper street use will not entitle it to so construct its line across the tracks of a steam railroad as to substantially interfere with or obstruct the latter in the enjoyment of its rights." It was said by the court in a case in Connecticut that a steam railroad "holds its right of way charged with the performance of a public trust for its continuous use for public accommodation. * * * Its railroad is a great avenue of communication between one part of the state and another, and between this and other states. Any impediment to its safe and proper use is a matter of public concern, not to be measured by money, or dealt with on the footing of a claim for damages." *New York, N. H. & H. R. Co. v. Bridgeport Traction Co.*, 65 Conn. 410, 5 Am. Elec. Cas. 246. So, where it is proposed to construct an overhead trolley across the tracks of a steam railroad, the wires should be suspended at sufficient height to permit the free operation of the railroad. *Erslew v. New Orleans & N. E. R. Co.*, 49 La. Ann. 86, 21 So. 153.

Proper construction alone does not meet the full duties and obligations imposed upon the traction company in such case, but such duty extends to the proper maintenance thereof at all times. "Entirely apart from the fact that the wires may be charged with a dangerous current, the fact that such a structure is set up in a public street, even though duly authorized, involves the obligation to take care that it shall be constructed of good materials, in a substantial manner, so as to withstand all strains that may reasonably be anticipated, and that it shall be maintained in good repair." Keasbey, Electric Wires (2d ed.) sec. 233.

In *Excelsior Electric Co. v. Sweet*, 57 N. J. Law, 224, the court said: "The general rule is that the occurrence of the accident does not raise the presumption of negli-

gence, but where the testimony which proves the occur-
rence by which the plaintiff was injured discloses cir-
cumstances from which the defendant's negligence is a
reasonable inference, a case is presented which calls for
a defense." It has been held in other cases that from the
happening of such accident, in the absence of explanatory
circumstances, negligence will be presumed, and the bur-
den is upon the defendant of showing ordinary care.

In the notes to *Western Union Telegraph Co. v. State*,
31 L. R. A. 572, 576 (82 Md. 293), it is stated: "The
construction and maintenance of electric lines in the
highways being a matter wholly under the control and
care of the parties building them, and the maintenance
being wholly under the care of the parties owning them,
the court usually holds that the fact of an electric wire
falling or sagging into the street in such a way as to ob-
struct travel, and cause injury, is *prima facie* evidence of
negligence on the part of the company."

In 2 Joyce, Electric Law (2d ed.) sec. 608, it is said:
"We have already stated in a prior part of this work that
it is the duty of electrical companies, whose wires are
suspended along or across the streets and highways, to
string them in such a manner as not to interfere with or
obstruct public travel. If a traveler who is free from
contributory negligence is injured by contact with wires
stretched along or across a public highway he may re-
cover from the company maintaining such wires, for the
injury."

It appears that the box car upon which the plaintiff
was riding at the time he was struck by the defendant's
trolley wire was approximately 13 feet and 6 inches high,
that the plaintiff was 6 feet in height, and it would thus
seem clear that defendant's wire by which he was struck
and injured was only about 19 feet above the railroad
track; therefore it may be reasonably inferred from the
undisputed facts of this record that the height at which
the defendant constructed and maintained its trolley wire
was insufficient to enable the railroad company to operate

its trains with safety to its employees. We are therefore of opinion that the plaintiff made a case which called for explanation on the part of the defendant, and it was incumbent upon it to show that it had constructed and maintained its wires at a suitable and sufficient height, or that the accident was caused by the happening of some event beyond its control, and was not caused by its negligence. It follows that the defendant's contention upon this point should not be sustained.

Defendant further contends that the undisputed testimony shows that the plaintiff accepted the sum of $50 from the railroad company in satisfaction of the damages he had suffered by the accident upon which this suit is based, and that such payment and satisfaction operated to release the defendant from liability in this case. Upon this question the evidence discloses that the payment made to the plaintiff, for which the release in question was given, included his wages during the time he was unable to perform his labors as yardmaster, and the sum of $20 to enable him to have his teeth repaired, which it is claimed was given to him as a mere gratuity on the part of the railroad company. Plaintiff also testified that it was never his intention by the acceptance of this money to release his claim against the defendant. Appellant's argument proceeds on the theory that the railroad company was a joint tort-feasor with the defendant, and, if this were true, defendant's contention would be well founded. As we view the record, it contains nothing which shows or tends to show that the railroad company was guilty of any negligence which contributed to defendant's injury. It is suggested that it was the duty of the railroad company to have erected guards, or what may be called a whip-lash warning signal at a suitable distance from and on each side of the street-crossing in question, for the purpose of warning its employees to avoid being struck by defendant's trolley wire. It would seem that there is no merit in this suggestion, for it was the duty of the defendant to erect and maintain its wires in such a manner

as to in nowise interfere with the safe operation of the railroad company's trains at the point in question; and not only plaintiff but the railroad company as well had the right to presume that the defendant had suitably performed its duty in that behalf. We are therefore of opinion that the payment and release in question in no way inured to the benefit of the traction company.

Finally, it is contended that the court erred in giving paragraphs 7, 8 and 9 of its instructions to the jury. An examination of the instructions complained of satisfies us that they are in accord with the views heretofore expressed in this opinion, and afford no basis for a reversal of the judgment.

For the foregoing reasons, the judgment of the district court is

AFFIRMED.